T.C. Memo. 2000-99


UNITED STATES TAX COURT


MICHAEL C. HOLLEN AND JOAN L. HOLLEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5586-97.                      Filed March 24, 2000.


Paul F. Christoffers, for petitioners.

Lisa K. Hartnett, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined a deficiency in
petitioners' Federal income tax for the taxable year 1988 of
$79,308 and additions to tax under sections 6653 and 6661(a) of

$3,965 and $19,827, respectively.[1]  After concessions,[2] the issues for decision are:  (1) Whether petitioners were required to report and pay income tax on a one-third distributive share of partnership income from Blue Bird Ranch Partnership (the partnership) in 1988, and (2) whether petitioners are liable for the additions to tax determined by respondent.  We resolve both issues in favor of respondent.

### FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulated facts are incorporated in our findings by this reference.

On the date the petition in this case was filed, petitioners were married and resided in Waterloo, Iowa.  Michael C. Hollen (petitioner) is a dentist who, during all relevant periods, operated a professional dental practice through his professional

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In the notice of deficiency, respondent determined that petitioners had unreported taxable gain of $280,275, representing 50 percent of the partnership's gain from the sale of the ranch property.  Respondent now concedes that only one-third of the gain from the sale of the property in 1988; i.e., $195,425, is allocable to petitioners.  Petitioners concede that they received taxable income of $150 from Hawkeye Institute of Technology, $833 from petitioner's professional corporation, and $89 of interest from the Blue Bird Ranch Partnership that was not reported on their Federal income tax return for 1988.

corporation, Michael C. Hollen, D.D.S., Professional Corporation (P.C.).

On March 17, 1982, petitioners and two other married couples purchased a fruit and flower farm in San Diego County, California, from Hugh D. and Bonnie B. Lentz (Mr. and Mrs. Lentz). The property was known as the Blue Bird Ranch (the ranch) and was acquired for $1,138,750. Petitioners and the other purchasers executed a promissory note in the amount of the purchase price and a deed of trust to secure payment of the note. Title to the ranch was conveyed to petitioners and the other purchasers as tenants in common.

On or about April 1, 1982, petitioner and the other two husbands formed the partnership to operate and manage the ranch. The wives did not participate in the partnership.[3]

Although the partners did not reduce their partnership agreement to writing, they orally agreed that each couple would contribute its one-third interest in the ranch to the partnership. Petitioner believed that title to the property had been transferred to the partnership until he was advised to the

---

[3]Although petitioner testified that the wives were not partners, whether or not the wives contributed capital to the partnership or were partners as a matter of law is not material to the decision we reach in this case. Consequently, we do not make specific findings of fact regarding whether the wives were partners.

contrary by his attorney in 1998. In fact, title to the property was never formally transferred to the partnership.

From the inception of the partnership in 1982 to the sale of the ranch in 1988, the partnership operated as if it owned the ranch. The partnership paid the expenses of operating the ranch and claimed them as deductions on its Federal partnership tax returns. The partnership listed the ranch and all improvements thereon as assets on its partnership tax returns and depreciated the improvements. Petitioner signed each partnership tax return.

The partnership was not profitable. From 1982 to 1987, petitioners claimed flowthrough losses from the partnership totaling $695,047 on their individual income tax returns. To keep the partnership afloat, petitioner and one of the other partners made several additional capital contributions during this period. Finally, in 1988, the partnership's financial problems came to a head because Mr. and Mrs. Lentz refused to modify the payment obligations under the promissory note and the deed of trust and threatened to foreclose on the ranch.

In October 1988, petitioners and the other two couples entered into a purchase and sale agreement in which they agreed to sell the ranch to Cele and Norma Pou (Mr. and Mrs. Pou). As consideration for the sale, Mr. and Mrs. Pou paid each couple

$10,000[4] and assumed the sellers' liability to Mr. and Mrs. Lentz.  The sellers executed a grant deed conveying title to Mr. and Mrs. Pou in October 1988, and the partnership dissolved thereafter.

On or about March 15, 1989, the partnership filed its 1988 partnership return in which it recognized gain of $631,507 from the sale of the ranch.  The partnership also issued to petitioner, in his individual name, a Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., showing his distributive share of partnership income, which included a one-third share of the gain from the sale of the ranch.  The partnership's return was prepared by the partnership's accountant, David Evans, and filed as its final return.

In April 1989, petitioners filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, requesting an extension of time to file their 1988 Federal income tax return.  The Form 4868 was prepared by petitioners' accountant, Louis Fettkether.  It reported an estimated tax liability for 1988 of $80,000, which petitioners paid with the extension request.  Petitioners' estimated tax

---

[4]The check was made payable to petitioners personally and not to the partnership or the P.C.  However, the payment was treated as a partnership distribution on the partnership's 1988 return and on the Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., issued to petitioner.

liability was calculated using the information from petitioner's Schedule K-1.

In July 1989, petitioner filed his P.C.'s Federal income tax return for the fiscal year ended October 31, 1988. This return was also prepared by Mr. Fettkether. It did not include any gain from the sale of the ranch or income from the partnership.

In October 1989, petitioner filed an amended corporate income tax return for the P.C. The amended return was prepared by a different return preparer, John Henss. It contained the following statement:

Reason for Amended Return.

On August 1, 1988 it was the intent of Michael C. Hollen to transfer to Michael C. Hollen, D.D.S., P.C. certain investment assets including an interest in Bluebird Ranch, a partnership. That partnership equity was in a deficit position. It was the intent of the parties that Michael C. Hollen would issue his note payable to Michael C. Hollen, D.D.S., P.C. in an amount equal to the deficit in Bluebird Ranch which was assumed by Michael C. Hollen, D.D.S., P.C. over the value of the other assets assumed by Michael C. Hollen, D.D.S., P.C. Due to a scrivener error the assumption of the Bluebird Ranch deficit was not recorded in the corporate records. Upon detection of said scrivener error the verbal agreement was confirmed and made a matter of record.[5]

---

[5]At trial, petitioner testified that he took steps to protect petitioners' personal assets in the event that Mr. and Mrs. Lentz foreclosed on the note and obtained a judgment against petitioners. Specifically, petitioner claimed that, in August 1988, petitioners transferred most of their personal assets to his P.C. in connection with the establishment of an Employee Stock Ownership Plan (ESOP). Although petitioner testified that
(continued...)

No gain from the sale of the ranch or income from the partnership was reported on the amended return.

Also in October 1989, petitioners filed their 1988 Federal income tax return. This return was prepared by Mr. Henss. Petitioners did not report any gain from the sale of the ranch or any partnership income on this return and did not make any disclosure with respect to either the sale of the ranch or the Schedule K-1 issued to petitioner. Instead, on Schedule D of their return, petitioners reported a sale of petitioner's partnership interest on August 1, 1988, to the P.C. at a purchase price equal to petitioner's alleged adjusted basis. No gain or loss was realized on the purported sale. Petitioners reported taxable income of $7,013, total tax of $1,054, and an overpayment of $78,946.

In 1992 or 1993, respondent audited the partnership's tax return for 1988.[6] During the audit of the 1988 partnership

---

[5](...continued)
his interest in the partnership and/or the ranch was included in the transfer, petitioner admitted that neither petitioner's partnership interest nor any ownership interest in the ranch was included on the original list of assets allegedly transferred to the P.C. No documentation regarding the alleged transfer to the P.C. was introduced into evidence at the trial. Petitioner testified that the failure to list his partnership interest or any interest in the ranch was a scrivener's error and that the omission was later corrected. The record is silent as to when this alleged amendment occurred.

[6]Respondent also audited the partnership's 1982 tax return
(continued...)

return, petitioner represented that the ranch was a partnership asset, that petitioner was a partner in the partnership, and that the sale of the ranch had been reported correctly on the partnership return. Relying on petitioner's representations and on the previously filed partnership returns, respondent did not make any adjustments to the partnership's return.

Respondent also audited petitioners' Federal income tax return for 1988. Upon completion of the audit, respondent issued a notice of deficiency in which respondent disregarded the alleged transfer of petitioner's partnership interest to the P.C. and determined that petitioner was a partner when the ranch was sold in 1988, that petitioner was required to report his distributive share of partnership income for 1988, and that petitioners were liable for additions to tax under section 6653 and section 6661.

OPINION

Petitioners make two arguments in an effort to avoid reporting and paying income tax on petitioner's 1988 distributive share of partnership income. First, petitioners argue that, although the partnership operated the ranch from 1982 to 1988,

---

[6](...continued)
several years earlier. Petitioner participated in the audit but did not inform the auditing agent that the ranch was titled in the name of the individuals and not in the partnership's name. Petitioner explained this failure by claiming that he did not know title was held in the names of the individuals until 1998.

the partners and their wives, as individuals, owned the ranch. Therefore, petitioners contend that when the ranch was sold in 1988, petitioners and their cotenants were required to report the gain realized on the sale after taking into account their cost basis in the property unreduced by depreciation claimed in prior years by the partnership.[7]  Second, petitioners argue that, even if the partnership is deemed to have owned the ranch prior to its sale in 1988, petitioner's interest in the partnership was transferred to the P.C. prior to the sale, and petitioners are not individually liable for income tax on any portion of the gain.

Respondent urges us to reject petitioners' arguments, contending, among other things, that the duty of consistency binds the partnership and petitioners to their original reporting position--that the ranch was partnership property.

---

[7]We question the premise on which petitioner relies in making this argument.  Petitioner assumes that if he can convince us that the ranch was not partnership property, he can calculate the gain from the sale of the ranch in 1988 using his cost basis unreduced by depreciation because, in his capacity as the owner of the ranch, he never claimed depreciation on the ranch.  Sec. 1016(a)(2) requires that a taxpayer's basis in property must be reduced by depreciation allowed or allowable.  Even if petitioner did not claim depreciation with respect to the ranch, petitioner's basis in the ranch must still be reduced by the depreciation allowable under sec. 167 if the requirements of sec. 167 are met.

The Duty of Consistency

The "duty of consistency", sometimes referred to as quasi-estoppel, is an equitable doctrine that Federal courts historically have applied in appropriate cases to prevent unfair tax gamesmanship.  Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974); Cluck v. Commissioner, 105 T.C. 324 (1995); LeFever v. Commissioner, 103 T.C. 525 (1994), affd. 100 F.3d 778 (10th Cir. 1996).  The duty of consistency doctrine "is based on the theory that the taxpayer owes the Commissioner the duty to be consistent in the tax treatment of items and will not be permitted to benefit from the taxpayer's own prior error or omission."  Cluck v. Commissioner, supra at 331.  It prevents a taxpayer from taking one position on one tax return and a contrary position on a subsequent return after the limitations period has run for the earlier year.  See id.  If the duty of consistency applies, a taxpayer who is gaining Federal tax benefits on the basis of a representation is estoped from taking a contrary return position in order to avoid taxes.  See id.

This case is appealable to the Court of Appeals for the Eighth Circuit.  In Beltzer v. United States, supra at 212, the Court of Appeals for the Eighth Circuit held that a taxpayer is placed under a duty of consistency when:

(1) the taxpayer has made a representation or reported an item for tax purposes in one year,

(2) the Commissioner has acquiesced in or relied on that fact for that year, and

(3) the taxpayer desires to change the representation, previously made, in a later year after the statute of limitations on assessments bars adjustments for the initial year.

Id. at 212; see also LeFever v. Commissioner, supra at 543 (quoting Beltzer v. United States, supra).  Because the duty of consistency is an affirmative defense, respondent bears the burden of proving that it applies.  See Rule 142(a).

Throughout the life of the partnership, petitioner consistently represented to respondent that the ranch was partnership property.  Petitioner did so by causing the partnership to file tax returns claiming depreciation deductions with respect to the ranch and by asserting the ranch was partnership property during audits of the partnership's Federal income tax returns.  Consistent with the partnership's reporting position, petitioners filed individual Federal income tax returns for each of the taxable years 1982 through 1987 claiming petitioner's distributive loss from the partnership.  The loss was calculated, in part, by deducting depreciation on ranch buildings and other improvements.  When petitioners filed their Federal income tax return for 1988, however, they changed their representation with respect to the ranch, taking the position

instead that the ranch was not partnership property and that the gain from the sale of the ranch was not income to them. Several years later, during the audit of the 1988 partnership return, petitioner failed to inform respondent that title to the ranch was held individually or that he had changed his prior reporting position that the ranch was partnership property.

These facts satisfy the three elements necessary to invoke the duty of consistency under Beltzer v. United States, supra. First, petitioner consistently represented that the ranch was partnership property, from the filing of the first partnership return to the filing of the partnership's final return. That representation carried over to petitioner's Federal income tax returns for 1982 through 1987. Second, respondent acquiesced in and relied upon these representations to respondent's detriment by allowing the period of limitations on assessment to run on petitioners' income tax returns without adjusting their distributive share of partnership income and deductions. See sec. 6501. Third, petitioner now claims that his previous representations were in error and seeks to change the representation on his 1988 Federal income tax return.

Petitioners argue that the duty of consistency should not apply because they are innocent of any intentional wrongdoing. They contend that they did not learn that title to the ranch was

held individually until after the period of limitations had run. This defense is without merit because the duty of consistency applies equally to a taxpayer who innocently misrepresents a fact in a time-barred year and one who misleads intentionally. See Beltzer v. United States, supra at 212; Unvert v. Commissioner, 72 T.C. 807, 816 (1979), affd. 656 F.2d 483 (9th Cir. 1981).[8]

Petitioners also argue that the duty of consistency does not apply because whether they own a property interest for Federal tax purposes is controlled by State law.[9] We reject this argument. Determining whether the ranch was owned by the

_____

[8] In Demirjian v. Commissioner, 54 T.C. 1691, 1696 (1971), affd. 457 F.2d 1 (3d Cir. 1972), a case presenting similar facts, we rejected the taxpayers' arguments using a burden of proof analysis. The taxpayers in Demirjian, like the taxpayers in this case, claimed that they held title to certain real property as tenants in common rather than as partners. They had filed partnership tax returns and various correspondence which represented that the partnership owned the real property. Although we did not apply the duty of consistency to resolve the case, we analyzed the applicable burden of proof and concluded that the taxpayers had failed to demonstrate that the property in question was not partnership property. We held that "the record shows that * * * [the taxpayers] intended to and in fact did carry on their prior corporate venture in partnership form, and that they operated the business property conveyed to them as partners. Petitioners have failed to prove otherwise." Id. at 1697-1698. Here, too, the taxpayers "have failed to prove otherwise." Id. at 1698; see also McManus v. Commissioner, 583 F.2d 443 (9th Cir. 1978) (a taxpayer is estopped from denying that real property is partnership property even though the property is held as a tenancy in common), affg. 65 T.C. 197 (1975); Smith v. Commissioner, T.C. Memo. 1978-416 (land was partnership property despite the fact that legal title to the land was held as a tenancy in common).

[9] Petitioners alleged on brief that the partnership is a California partnership and that California law applies.

partners as individuals or by the partnership is simply not necessary to our decision regarding the duty of consistency. The duty of consistency is an affirmative defense grounded in equity and is designed to prevent taxpayers from changing a tax-significant representation benefiting the taxpayer at a time when the Commissioner is prevented by law from correcting the taxpayer's tax reporting position based on that representation. We need not decide whether the representation in question is true or false in order to decide whether petitioners are bound by the duty of consistency. We need only decide if petitioners are attempting to change a representation for tax purposes after respondent has relied on that representation and the applicable period of limitations has expired. The duty of consistency applies even if the original representation is erroneous, as long as respondent demonstrates that the three elements necessary to invoke the duty of consistency have been satisfied. See Herrington v. Commissioner, 854 F.2d 755, 757 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986). In this case, once we determine that the duty of consistency applies, we no longer care who actually owned the ranch since, for Federal income tax purposes, the duty of consistency requires petitioners to be bound by their prior representations regarding the ranch's ownership. For this reason, we need not and do not decide who

actually owned the ranch or whether State law applies in deciding that issue.

On these facts, we hold that the duty of consistency applies, and, therefore, petitioners are estopped from claiming that the ranch was not partnership property at the time of its sale in 1988.

The Alleged Transfer of the Partnership Interest
to the P.C. in 1988

Petitioners' second argument assumes that the ranch was partnership property and focuses on whether petitioner was the owner of his partnership interest for Federal tax purposes when the ranch was sold in October 1988. Petitioner claims that he transferred his partnership interest to his professional corporation in August 1988 and that his professional corporation was required to report the distributive share of income reflected on the Schedule K-1 issued to petitioner for 1988. Petitioners cite Evans v. Commissioner, 54 T.C. 40, 49 (1970), affd. 447 F.2d 547 (7th Cir. 1971), and Baker v. Commissioner, T.C. Memo. 1991-331, in support of their position. Their reliance on these cases is misplaced.

In Evans, the taxpayer transferred his partnership interest to a corporation that he formed to operate his own business. The transfer was pursuant to a detailed written assignment. The corporation listed the partnership interest as an asset of the

corporation on its balance sheet, deposited all partnership income, and reported the partnership's income on the corporate tax returns. Several years later, the partnership was severed and dissolved. Both the taxpayer and the corporation were parties to the dissolution agreement, and the corporation reported all gain from the disposition of the partnership interest. We held on these facts that the corporation, rather than the taxpayer, was taxable on the gain from the sale of the partnership interest.

In Baker, the taxpayer was a partner in a real estate development partnership. After he encountered financial problems, he executed a series of promissory notes to a related corporation as part of an arrangement to sever his business ties with his partner. The issue we resolved was whether the promissory notes provided additional basis in the taxpayer's partnership interest. We held that they did.

Both Evans and Baker are distinguishable from this case. In each of those cases, the taxpayer satisfactorily proved that the transaction in question actually occurred and that it had economic substance. In addition, the taxpayers and related entities did not attempt to avoid a tax liability that otherwise would have been owed by some taxpayer. In the present case, the P.C. failed to report any partnership income on its 1988 return

or to list the partnership interest as one of its assets.[10]
Other than petitioner's self-serving testimony, there is
absolutely no evidence of the alleged transfer in the record.
Petitioners did not introduce any contract, assignment, deed, or
contemporaneous written documentation to prove that the alleged
transfer occurred.  We are not required to accept a taxpayer's
self-serving, unverified, and undocumented testimony, and we
decline to do so here.  See Tokarski v. Commissioner, 87 T.C. 74,
77 (1986).

Petitioners have failed to prove that petitioner transferred
either his partnership interest or petitioners' alleged ownership
interest in the ranch property to his P.C. prior to the sale of
the ranch in October 1988.  We hold, therefore, that the ranch
was partnership property at the time of its sale in October 1988,
that the gain from the sale of the ranch was properly included in
calculating the partnership's income for 1988, and that
petitioner was required to report his distributive share of
partnership income for 1988 in accordance with the Schedule K-1
issued to him.  In view of our conclusions, it is not necessary

---

[10]On brief, petitioners, for the first time, claim that the
P.C. reported gain from the sale of the ranch on its Federal
income tax return for FYE Oct. 31, 1989.  Petitioners failed to
introduce this return into evidence at trial or to produce any
evidence that would corroborate this assertion.  We conclude on
this record, therefore, that petitioners have failed to prove
that the P.C. reported any gain from the sale of the ranch.

to determine what the basis of the ranch would be in the hands of either petitioners or the P.C.

Additions to Tax

In the notice of deficiency, respondent determined that petitioners are liable for additions to tax for negligence under section 6653(a) and for substantial understatement of income tax under section 6661.

For 1988, section 6653(a)(1) provides that, if any part of an underpayment of tax is due to negligence or disregard of rules or regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. For purposes of section 6653(a), negligence is defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). The taxpayer has the burden of proving that respondent's determination is erroneous. See Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Petitioners assert that their actions were not negligent. They argue that they were relying on the advice of their accountants in determining what to report as income. While it is true that a taxpayer may avoid liability for the addition to tax

under section 6653(a) if reasonable reliance in good faith on a competent and experienced return preparer is shown, reliance on professional advice, standing alone, is not an absolute defense to negligence.  See United States v. Boyle, 469 U.S. 241, 250-251 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 498 U.S. 1066 (1991). Rather, it is a factor to be considered.  See Freytag v. Commissioner, supra.  In order to claim that he reasonably relied in good faith on a competent and experienced return preparer, a taxpayer must demonstrate that he supplied all necessary information to the preparer, and the incorrect return was a result of the preparer's mistakes.  See Weis v. Commissioner, 94 T.C. 473, 487 (1990) (citing Pessin v. Commissioner, 59 T.C. 473, 489 (1972)).

Petitioners have failed to prove that they supplied all necessary information to their return preparer, that the advice they claimed to have received from their return preparer, Mr. Henss, was reasonable, or that they relied on the advice in good faith.  The partnership's accountant prepared the partnership tax return for 1988 in a manner consistent with prior years' returns and included on the 1988 partnership return gain from the sale of the ranch.  Schedules K-1 consistent with the partnership's return were issued to petitioner and the other partners.

Petitioners' regular accountant, Mr. Fettkether, estimated petitioners' Federal income tax liability for 1988 by taking into account the information from the Schedule K-1 and prepared Form 4868, which petitioners signed and filed. Petitioners offered no evidence regarding whether they informed Mr. Henss, when they hired him to prepare their 1988 income tax return, that the partnership and its partners consistently had claimed the ranch as partnership property or whether Mr. Henss did any analysis whatsoever regarding a taxpayer's duty of consistency. Even if petitioner or his adviser had performed any credible analysis of the relevant facts and law, the failure of both petitioner and his P.C. to report the income shown on petitioner's 1988 Schedule K-1 undercuts any argument that petitioner and his adviser acted reasonably under the circumstances.

On this record, we conclude that petitioner was negligent in attempting to avoid paying income tax on petitioner's share of partnership income. Petitioners have failed to prove their position was reasonable under the circumstances or that they had reasonable cause for their failure to report petitioner's distributive share of partnership income.

Petitioners also are liable for the addition to tax for substantial understatement of their tax liability authorized by section 6661. Section 6661, in effect for returns due in 1988,

provides that, if there is a substantial understatement of income tax for any taxable year, an amount equal to 25 percent of the underpayment attributable to such understatement must be added to the tax. For purposes of section 6661, there is a substantial understatement of income tax if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year in issue or $5,000. See sec. 6661(b)(1)(A).

In cases not involving tax shelters, the addition to tax under section 6661 is mandatory if there is a substantial understatement of income tax as defined by section 6661(b)(1) unless, and to the extent that, the taxpayer has substantial authority for the tax treatment of the disputed item or the relevant facts affecting the tax treatment of the disputed item are adequately disclosed within the meaning of section 6661(b)(2)(B)(ii). See sec. 6661(b)(2)(B).

Although petitioners attempted to show that certain case law supported their positions, petitioners failed to research or analyze their obligation to file consistently with prior returns. In addition, they failed to introduce any evidence showing that they or their return preparer did any investigation of petitioners' tax reporting obligations prior to filing their 1988

income tax return, and they failed to make a disclosure within the meaning of section 6661(b)(2)(B)(ii).

For all of these reasons, therefore, we hold that petitioners have failed to carry their burden of proof with respect to the addition to tax under section 6661. If the recomputed deficiency under Rule 155 attributable to respondent's determinations and the parties' concessions in this case satisfies the definition of substantial understatement under section 6661(b)(1), petitioners will be liable for the addition to tax under section 6661.

We have considered carefully all remaining arguments made by petitioners for a result contrary to that expressed herein, including arguments involving documents not in the record, and, to the extent not discussed above, we find them to be irrelevant or without merit.

To reflect the foregoing and the concessions of the parties,

Decision will be entered
under Rule 155.