T.C. Memo. 2014-14

UNITED STATES TAX COURT

RIES ENTERPRISES, INC., Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 9941-11.                          Filed January 27, 2014.

Mark Eldridge (an officer),[1] for petitioner.

David Weiner, John Q. Walsh, Jr., and Elizabeth A. Carlson, for respondent.

MEMORANDUM OPINION

KROUPA, Judge:  Respondent determined a $161,200 deficiency in petitioner's Federal excise tax under section 4979A for 2002.[2]  Respondent further

_____

[1]Mr. Eldridge is acting in his capacity as vice president of petitioner.

[2]All section references are to the Internal Revenue Code (Code) in effect for

(continued...)

[*2] determined that petitioner was liable for additions to tax of $36,270 and

$40,300 for the same year under section 6651(a)(1) and (2), respectively.[3]

We are asked to decide whether petitioner owes the Federal excise tax and

the additions to tax for 2002.  We hold that petitioner does.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122, and the

facts are so found.  The stipulation of facts and its accompanying exhibits are

incorporated by this reference.  Petitioner's principal place of business at the time

it filed the petition was Rockwell, Iowa.

## I. Petitioner

John Ries, an integral player in the controversy before us, incorporated

petitioner in 2002 to engage in the rental and leasing business.[4]  In the same year,

---

[2](...continued)
the year in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure, unless otherwise indicated.

[3]Respondent had also determined deficiencies in petitioner's Federal excise
tax under sec. 4975 for each of 2005 through 2008 and additions to tax under sec.
6651(a)(1) and (2) with respect to each of those years.  Respondent has since
conceded that petitioner is not liable for the sec. 4975 excise tax or the related
additions to tax under sec. 6651(a)(1) and (2) for 2005 through 2008.

[4]Mr. Ries first organized John Ries Excavating, LC (Limited), as a limited
liability company.  Years later, Mr. Ries merged Limited with and into Ries

(continued...)

[*3] petitioner elected to be treated as an S corporation. Consonant with this election, in 2002 petitioner filed a Form 1120S, U.S. Income Tax Return for an S Corporation, and did not pay Federal income tax. Petitioner had two classes of stock outstanding at the time it elected to be treated as an S corporation.[5]

## II. The Plan

Petitioner decided to sponsor an employee stock ownership plan (Plan) in 2002.[6] Petitioner was the employer sponsor of the Plan and managed the Plan's assets through a trust (Trust).[7] Mr. Ries served as the sole trustee of the Trust.

---

[4](...continued)
Enterprises, Inc. (Ries), thereby creating petitioner, the surviving corporation.

[5]This fact affects petitioner's eligibility to elect to be taxed as an S corporation for 2002 and is discussed later.

[6]Before merging with Ries, Limited had adopted the John Ries Excavating, LC Employee Stock Ownership Plan (Limited ESOP). Ries had likewise adopted an employee stock option plan (Ries ESOP). In 2002 petitioner merged the Limited ESOP with the Ries ESOP and thereby formed the Plan.

[7]The Trust was originally formed as a component of the Limited ESOP. After Limited merged with Ries, petitioner decided to have the Trust manage the Plan's assets.

[*4]  The Plan was initially funded with a $200,000 loan (Loan).[8]  The Trust used the Loan proceeds to purchase petitioner's stock, which was used as security for the Loan and held by the Trust in a suspense account.

The Plan incorporated the anti-abuse requirements of section 409(p) because the Trust held stock of petitioner, an S corporation.  In particular, section 4.6 of the Plan provided:

> No portion of the Trust Fund attributable to (or allocable in lieu of) Company Stock in an S corporation may, during a "nonallocation year," accrue (or be allocated directly or indirectly under any plan maintained by the Employer meeting the requirements of Code Section 401(a)) for the benefit of any disqualified person.

The Plan defined "Trust Fund" to mean the Trust assets, "Company Stock" to mean the stock of petitioner and "Employer" to mean petitioner.[9]  During 2002 the Trust owned 80% of petitioner's common stock.  Mr. Ries and his wife owned the rest.

The Plan allocated shares of petitioner's stock to Mr. Ries in 2002.  At that time petitioner was treating the Plan as a qualified plan under section 401(a) and

---

[8]Before merging with Ries, Limited lent $200,000 to the Trust.  Petitioner assumed this obligation in 2002.

[9]The Plan, before being amended, defined "Company Stock" to mean the stock of Limited and "Employer" to mean Limited.  After Limited merged with and into Ries and the Limited ESOP merged with and into the Ries ESOP, petitioner assumed Limited's role under the Plan.

[*5] the Trust as tax exempt under section 501(a).  In 2002 the Trust made or was credited with making a $28,265 payment to petitioner toward the Loan.  The Trust then released from the suspense account 8.4568 shares of petitioner's stock, all of which were allocated to Mr. Ries.  Mr. Ries was petitioner's sole employee and the Plan's sole participant.

Respondent determined in the deficiency notice that the Trust had violated section 409(p) for 2002 by releasing petitioner's shares from the suspense account and allocating them to Mr. Ries.[10]  Respondent therefore concluded that petitioner owed excise tax of $161,200 under section 4979A.  Respondent also determined in the deficiency notice that petitioner was liable for additions to tax under section 6651(a) and (b) because it neither paid excise tax for 2002 nor filed a Form 5330.

Petitioner timely filed a petition.

## Discussion

We are asked to address whether the Plan violated the anti-abuse provisions of section 409(p) by allocating shares of petitioner's stock to Mr. Ries--the Plan's sole participant and petitioner's sole employee.  We first address whether the Plan was an employee stock option plan, or ESOP.  We then address whether the Plan

_____

[10]Respondent prepared a substitute for return for petitioner's 2002 Form 5330, Return of Excise Taxes Related to Employee Benefit Plans.  See sec. 6020(b).

[*6] violated section 409(p), and, as a consequence, whether petitioner owes Federal excise tax under section 4979A and additions to tax under section 6651(a)(1) and (2).[11]

Petitioner's sole argument is that the Plan was not an ESOP for 2002 and therefore it cannot be subject to the excise tax under section 4979A because only an ESOP can violate section 409(p). Respondent contends that petitioner is liable for the excise tax under section 4979A because the Plan was an ESOP until it violated section 409(p). We agree with respondent.

I.  Whether the Plan Was an ESOP in 2002

We begin with a brief discussion of ESOPs and the limits Congress placed on their ownership of stock in S corporations. Generally, an ESOP is a defined contribution plan that allows an employee to own stock in a corporate employer. An ESOP may be a stock bonus plan or a stock bonus and a money purchase plan, both of which are exempt from Federal income tax under section 401(a). Sec. 4975(e)(7).

---

[11]The sec. 4979A excise tax is part of chapter 43 of the Code. A notice of deficiency may include any tax imposed by chapter 43. Sec. 6212(a). A taxpayer may file a petition with this Court for redetermination of a deficiency set forth in a notice of deficiency. Sec. 6213. Respondent sent petitioner a notice of deficiency, and petitioner timely filed a petition. Accordingly, we have jurisdiction to hear this case.

[*7]   Before 1996 ESOPs were prohibited from owning stock in S corporations. In 1996 Congress removed this restriction.  See Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1316(a), 110 Stat. at 1785 (amending section 1361(b) and (c)).  In 1997 Congress further relaxed the rules relating to ESOPs by exempting ESOPs from unrelated business income tax.  See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1523(a), 111 Stat. at 1070 (adding section 512(e)(3)).  These changes made available to small business owners significant tax and other advantages.

Responding to perceived abuses, Congress in 2001 enacted section 409(p), which generally limits the tax benefits available through an ESOP that owns stock of an S corporation unless the ESOP provides meaningful benefits to rank-and-file employees.  See Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, sec. 656, 115 Stat. at 131; see also H.R. Rept. No. 107-84, at 274 (2001), 2001 U.S.C.C.A.N. 46, 200.

There are significant tax consequences when an ESOP violates the section 409(p) requirements.  For one, an excise tax equal to 50% of the total prohibited allocation is imposed.  Sec. 4979A.  Furthermore, the ESOP will not satisfy the requirements of section 4975(e)(7) and will cease to qualify as an ESOP.

[*8]   We now address whether the Plan qualified as an ESOP for 2002.  Petitioner argues that the Plan did not qualify as an ESOP for two reasons.  Petitioner begins each argument with the definition of an ESOP.  Petitioner notes that for the Plan to qualify as an ESOP, it must meet the requirements under "section 409(h), section 409(o), and if applicable, section 409(n), section 409(p), and section 664(g)."  Sec. 4975(e)(7) (emphasis added).  Petitioner notes the test under section 4975(e)(7) is conjunctive and argues that the Plan cannot qualify as an ESOP because it did not meet the requirements of both section 409(p) and (n).

Petitioner first argues that the Plan did not meet the requirements of section 409(p).  Petitioner claims that the Plan did not contain the restriction required by section 409(p)(1) and therefore the Plan does not meet the definition of an ESOP under section 4975(e)(7).  In stark contrast to petitioner's argument, section 4.6 of the Plan does in fact track the requirements of section 409(p)(1).  Accordingly, petitioner's theory lacks merit.

Petitioner next argues that the Plan did not meet the requirements of section 409(n), which petitioner wrongly assumes to apply to the Plan.  Section 409(n) applies to an ESOP to which section 1042 also applies.  Section 1042 provides, generally, that a taxpayer may elect to defer recognition of the gain from a sale of stock to an ESOP in certain circumstances.  Petitioner concedes that section 1042

[*9] does not apply to it or to the Plan. Section 409(n), therefore, does not apply to our analysis of whether the Plan met the definition of an ESOP for 2002 because it is not "applicable" to petitioner or to the Plan. See sec. 4975(e)(7) (flush language). Accordingly, petitioner's theory lacks merit.

II. Excise Tax Under Section 4979A

We now address whether petitioner owes excise tax under section 4979A because the Plan violated section 409(p).

We focus first on section 4979A. An excise tax is imposed on allocations of employer securities with respect to an ESOP in violation of section 409(p). Sec. 4979A(a)(3). The tax imposed equals 50% of the prohibited allocation amount. Id. (flush language). The prohibited allocation amount is the amount allocated to the account of any person in violation of section 409(p)(1). Sec. 4979A(e)(2)(A). The prohibited allocation amount for the first nonallocation year of any ESOP is determined by taking into account the total value of all deemed-owned shares of all disqualified persons with respect to that Plan. Sec. 4979A(e)(2)(C).

We now turn to section 409(p), which prohibits an impermissible allocation. Sec. 1.409(p)-1(b), Income Tax Regs. An impermissible allocation occurs during

[*10] a nonallocation year to the extent that a disqualified person accrues[12] benefits that would have been added to his or her account and invested in employer securities consisting of S corporation stock that an ESOP owned but for a provision in the ESOP precluding such addition and investment. Sec. 1.409(p)-1(b)(2)(iii), Income Tax Regs.

To find that the Plan made an impermissible allocation for 2002 in violation of section 409(p), we must therefore find that petitioner was an S corporation, Mr. Ries was a disqualified person and 2002 was a nonallocation year. Petitioner did not address these requirements, and we accordingly consider petitioner to have conceded that each is satisfied. See Rule 142(a); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989). We nevertheless discuss each requirement, in turn, as there is little authority on these issues.

A. Petitioner Will Be Treated as an S Corporation for 2002.

Petitioner will be treated as an S corporation for 2002 even though it did not meet the definition of an S corporation for that year. A corporation with more than one class of stock cannot qualify as an S corporation. See sec. 1361(b)(1)(D). Petitioner had two classes of stock in 2002 when it elected to be treated as an S

---

[12]An accrual of additional benefits includes a release and allocation of assets from a suspense account, as described in sec. 54.4975-11(c) and (d), Pension Excise Tax Regs.

[*11] corporation and therefore would not have qualified as an S corporation. For the purposes of this proceeding, however, petitioner will be treated as if it were an S corporation for 2002 under the duty of consistency. See Cluck v. Commissioner, 105 T.C. 324 (1995) (applying the duty of consistency); Hollen v. Commissioner, T.C. Memo. 2000-99 (same), aff'd, 25 Fed. Appx. 484 (8th Cir. 2002).

The duty of consistency applies when a taxpayer represents a fact to the Commissioner for one year, the Commissioner relies on that representation for that year and the taxpayer then desires to change the representation for a later year after the statute of limitations on assessment bars adjustment for the initial year. Beltzer v. United States, 495 F.2d 211 (8th Cir. 1974); Cluck v. Commissioner, 105 T.C. at 332. This duty applies for purposes of the excise tax under section 4979A even though petitioner made a representation for purposes of a different tax--the Federal income tax. Cf. Beltzer, 495 F.2d at 212 (holding that the duty applies for purposes of the Federal income tax where the taxpayer made a representation for purposes of the Federal estate tax).

Petitioner represented to respondent that it qualified as an S corporation for 2002 when it filed its election to be treated as such. Respondent relied on this representation for 2002 because petitioner reported on its 2002 Form 1120S that it

[*12] owed no income tax because of its electing to be treated as a passthrough entity under subchapter S. The statute of limitations on assessment now bars respondent from adjusting petitioner's income tax liability for 2002. See sec. 6501(a).

Petitioner was silent regarding its desire to be treated as something other than an S corporation for 2002. Petitioner cannot avoid the duty of consistency, however, by simply remaining silent. Allowing silence to trump the duty of consistency would only encourage gamesmanship and absurd results. Therefore, we will treat petitioner as an S corporation for 2002 under the duty of consistency.

B. Mr. Ries Was a Disqualified Person for 2002.

We now turn to whether Mr. Ries was a disqualified person for 2002. A taxpayer will be considered a disqualified person under section 409(p) if the number of deemed-owned shares of the taxpayer is at least 10% of the number of deemed-owned shares in the S corporation. Sec. 409(p)(4)(A)(ii); Love v. Commissioner, T.C. Memo. 2012-166. Deemed-owned shares of the taxpayer include stock allocated to the taxpayer under an ESOP and the taxpayer's share of unallocated stock held by the ESOP. Sec. 409(p)(4)(C); sec. 1.409(p)-1(e), Income Tax Regs.

[*13] The Plan purchased shares of petitioner's stock with the proceeds of the Loan. The Trust held those shares in a suspense account. During 2002 the Trust made or was credited with making a payment to petitioner of $28,265 toward the Loan. The Trust then released 8.4568 shares of petitioner's stock that had been encumbered by the Loan. Because all of the stock that the Trust released was allocated to Mr. Ries, he is deemed to own all of petitioner's stock held by the Trust. See sec. 1.409(p)-1(e)(2), Income Tax Regs. Accordingly, Mr. Ries was a disqualified person for 2002.

C. 2002 Was a Nonallocation Year.

For purposes of section 409(p), 2002 was a nonallocation year. A nonallocation year includes any plan year of an ESOP holding shares of an S corporation where a disqualified person owns at least 50% of the S corporation's outstanding stock. Sec. 409(p)(3)(A); sec. 1.409(p)-1(c)(1)(i), Income Tax Regs. A taxpayer is treated as owning the shares that his or her spouse owns. Secs. 409(p)(3)(B), 318(a)(1)(A). A taxpayer is also treated as owning deemed-owned shares. Sec. 409(p)(3)(B)(ii).

The Trust held 80% of petitioner's stock during 2002, and Mr. Ries and his wife owned the remaining 20%. Mr. Ries, a disqualified person, is therefore treated as owning all of petitioner's stock for 2002. See secs. 409(p)(3),

**[\*14]** 318(a)(1)(A); sec. 1.409(p)-1(e)(2), Income Tax Regs. Accordingly, 2002 is a nonallocation year. See sec. 409(p)(3).

D. The Plan Violated Section 409(p) for 2002.

The Plan made an impermissible allocation of petitioner's stock in 2002 and thereby violated section 409(p). As previously discussed, we will treat petitioner as being an S corporation for 2002. We also previously found that Mr. Ries was a disqualified person for 2002 and that 2002 was a nonallocation year. Accordingly, the Plan made an impermissible allocation of petitioner's stock to Mr. Ries in violation of section 409(p) when it released petitioner's shares from the suspense account. See sec. 1.409(p)-1(b)(2)(iii), Income Tax Regs.

III. Additions to Tax Under Section 6651(a)(1) and (2)

We turn now to whether petitioner is liable for additions to tax for failing to file a timely return and timely pay the amount of tax shown on a return. See sec. 6651(a)(1) and (2). The addition to tax for a delinquent return is equal to 5% of the amount required to be shown as tax on the return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent. Sec. 6651(a)(1). The addition to tax for delinquent payment is calculated as 0.5% of the amount shown as tax on

**[\*15]** the return but not paid, with an additional 0.5% for each month or fraction thereof during which the failure to pay continues, up to a maximum of 25%.[13]

Petitioner, a corporation, bears the burden of proving that the additions to tax for delinquent filing and delinquent payment are erroneous.[14] See Rule 142(a). Petitioner appears to argue only that it was not subject to the excise tax and that therefore it could not be subject to an addition to that tax.[15] We previously found that petitioner is liable for excise tax under section 4979A for 2002. We further found that petitioner neither filed a return for 2002 reporting this tax liability nor paid the tax it owed. Therefore, petitioner is also liable for the additions to tax. See secs. 6651(a)(1), (2), (g)(2).

_____

[13]The amount of the addition to tax under sec. 6651(a)(2) reduces the amount of the addition to tax under sec. 6651(a)(1) for any month for which an addition to tax applies under both paragraphs. Sec. 6651(c)(1).

[14]The burden of production shifts to the Commissioner under circumstances that do not apply here. See sec. 7491(c).

[15]Petitioner has not addressed the reasonable cause exception to either addition to tax and is deemed to have waived this argument. Moreover, petitioner has not addressed whether Form 5330 is the return required to trigger liability for additions to excise tax imposed solely under sec. 4979A. See secs. 6651(a)(1), (2), (g)(2), 6020(b), 6011(a).

**[*16]** We have considered all arguments made in reaching our decision, and, to the extent not mentioned, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.